Bryson *v.* Bryson.

---

BRYSON, Respondent, *vs.* BRYSON, Appellant.

1. A legislative divorce is unconstitutional.

*Appeal from Pike Circuit Court.*

*Broadhead, Glover & Campbell,* for appellant, urged the court to review the decision in the cases of *State* v. *Fry,* 4 Mo. Rep. 120, and *Bryson* v. *Campbell,* 12 Mo. Rep.

*A. H. Buckner,* for respondent, relied upon *State* v. *Fry,* and *Bryson* v. *Campbell,* and cited the following additional cases : *Holmes* v. *Holmes,* 4 Barb. Rep. 29. *People* v. *Westchester,* 4 ib. 75. 3 B. Monroe, 91. *Maguire* v. *Maguire,* 7 Dana.

GAMBLE, Judge, delivered the opinion of the court.

This is a proceeding by a wife to obtain alimony from her husband, on the ground that he had abandoned her without

cause, and had refused to maintain and provide for her. He answers, relying upon an act of the general assembly, approved February 24, 1845, by which it is enacted, "that the bonds of matrimony heretofore contracted between Isaac N. Bryson and Margaret L. Bryson, formerly Margaret L. Love, *be and the same are hereby dissolved.*" The Circuit Court decided that this act was unconstitutional and gave judgment for the plaintiff.

1. In the case of the *State* v. *Fry*, 4 Mo. Rep. 120, decided in 1835, it was held, that the general assembly could not constitutionally grant divorces. In *Bryson* v. *Campbell*, 12 Mo. Rep. 498, the case of the *State* v. *Fry* was approved, and the law regarded as settled. The question is again presented, no doubt, with the hope that, in a change in the judges, there may be a change in the views of the court.

The act divorcing Bryson and his wife was, in our judgment, an attempt to exercise the judicial power which, by the constitution, is vested in a "supreme court, circuit courts, and such inferior tribunals as the general assembly may, from time to time, ordain and establish." The powers of the government, legislative, executive and judicial, are, by the constitution, vested in different departments, and it is clearly not within the letter or spirit of the constitution that either department shall draw to itself the powers conferred upon another. It is perfectly obvious, that if sentences may be pronounced by the legislature, between two individuals, by which their rights and relations may be conclusively determined, all the powers designed to be exercised by courts of justice may be drawn to the general assembly, and the whole judicial power of the state may be absorbed by that body. Although there might be no claim to issue process to enforce their decrees or sentences, the office and duty remaining to be exercised by the courts of justice would simply be, to recognize the rights as determined by the general assembly, and enforce those rights by process. The act of marriage confers upon the parties certain rights and imposes certain duties which it it not necessary to enumerate, be-

cause they are familiar to all. If the general assembly can, by its own power, dissolve the marriage, it must have the power to declare the effect of such dissolution upon the rights of property and upon the duties and obligations which result from the marriage. If the relation can be dissolved, and yet the rights of property remain unchanged, because the assembly cannot interfere with them, then the husband will still retain all his interest in, and control over, the real estate of the wife, her chattels real, choses in action, and personal property, and it would seem to be but a natural consequence that he should remain liable not only for her debts, contracted before the marriage, but for her maintenance and support after such divorce. To leave the parties thus bound to each other in all that concerns property and pecuniary obligation, amounts to but little more than an act of separation. It may be a defence to a prosecution for bigamy, if the parties subsequently married, but it would not be what was designed by the assembly—a divorce from the bonds of matrimony. In *Maguire* v. *Maguire*, 7 Dana, 184, it is said by Chief Justice Robertson, "As every well organized society is essentially interested in the existence, harmony and decorum of all its social relations, marriage, the most elementary and useful of them all, is regulated and controlled by the sovereign power of the state, and cannot, like mere contracts, be dissolved by the mutual consent only of the contracting parties, but may be abrogated by the sovereign will, either with or without the consent of both parties, whenever the public good or justice to both or either of the parties will be thereby subserved." "So far as a dissolution of a marriage by public authority may be for the public good, it may be the exercise of a legislative function; but so far as it may be for the benefit of one of the parties, in consequence of a breach of contract by the other, it is, undoubtedly, judicial."

This language would seem very clearly to express the idea that the legislature might, *mero motu*, dissolve a marriage between any man and wife in the state, upon considerations of public expediency, without the application or consent of either

party; but the same judge, in *Berthelmy* v. *Johnson*, 3 B. Mon. 90, does not appear to have entertained any settled opinion upon that question, for he says, "whether the legislature could, constitutionally, dissolve a marriage without the consent of both parties to it, and without any breach of the contract, is a question not now presented. If this could not be done, nevertheless a divorce for a breach of conjugal obligation, judicially ascertained, could not be unconstitutional." The idea expressed by Judge Robertson, in *Maguire* v. *Maguire*, that there might be a dissolution of the marriage relation by the sovereign power, from considerations of public good, seems to have embarrassed the court in subsequent cases. In *Gaines* v. *Gaines*, 9 B. Mon. 308, it is said: "If it were conceded, as intimated in *Maguire* v. *Maguire*, that the marriage contract is not, as a contract, wholly removed, like other contracts, from the power of the legislature to dissolve it in any particular case by special act of divorce, and that a dissolution of a marriage, if required by the public good, may be a legislative function, still, it cannot be admitted that a power thus deduced, uncertain upon principle as to its existence, and still more uncertain as to the grounds of its legitimate exercise, can override the express and highly conservative prohibitions in the constitution intended for the protection of the private rights of property. We are, therefore, of opinion, that whatever power to be exercised in view of the public good, the legislature may have to enact divorces in special cases, as it cannot, even for the public good, change the right of private property from one to another without compensation, much less can it do so by a special act of divorce, sought by one of the parties against the consent of the other, with the purpose or effect of operating upon the rights of property incident to the marriage relation, as created and sustained by the general laws applicable to that relation."

It may not be necessary to express an opinion, in the present case, upon the question whether the general assembly can, from regard to the public good, dissolve the marriage relation

existing between A. and B., although their rights of property and pecuniary obligations should remain untouched. But we have no hesitation in expressing our dissent from the position, that the pretext of the public good can confer any power upon the assembly, to send its orders and sentences into the dwellings of citizens and separate men and their wives, or make that a "legislative" act which, clearly, without such pretence, would be the exercise of judicial power.

In *Gaines* v. *Gaines*, the court says, "the power of prescribing, by general laws, what causes shall constitute sufficient ground for a divorce, and what shall be the consequences of a divorce founded upon the ascertainment of these causes, is strictly within the legislative competency, and its exercise is entrusted to the legislative discretion. But the power of deciding upon the existence of these causes, in individual cases, and of pronouncing the divorce and enforcing its legal consequences, is strictly judicial." In the language of Chief Justice Robertson already quoted, "so far as the dissolution of the marriage may be for the benefit of one of the parties, in consequence of a breach of contract by the other, it is undoubtedly judicial." In *Bingham* v. *Miller*, 17 Ohio Rep. 446, it is held, that "the whole matter of the marriage relation, call it a contract, a Divine ordinance, a domestic relation, or what you will, is a matter of judicial action and consideration, before the parties concerned can be deprived of their rights or relieved from their duties; to grant a divorce is not to enact a law; the expression of the will of the law-making power, that a marriage relation is dissolved, is no law. It is a decree, a sentence, an order, a judgment, but not a law. A law is a rule, something permanent."

The cases here cited have been decided since the case of the *State* v. *Fry*, and sustain the decision there given. There would seem to be no necessity for going at large into the argument in support of the position that the act of the general assembly, in this case, was an attempt to exercise power conferred by the constitution on the judicial department. Divorce

has been a subject of judicial action in this country since 1807. The causes for which a divorce might be granted and the power of the courts, when rendering their decrees, have always been prescribed by statute. It is deeply to be regretted, that the legislative department should ever have listened to the applications of individuals for special acts of divorce, and it is a source of satisfaction, in rendering the judgment in the present case, that the opinion was expressed in this court, so early as 1835, against the constitutionality of such acts. Whatever of trouble and confusion may result from maintaining the decision of the *State* v. *Fry*, will not be attributable to any novel or unexpected opinions on the law. Those who either had not legal cause for seeking a divorce, or were in too great haste to wait to the end of regular judicial proceedings, and have, therefore, resorted to the legislature to obtain release from their bonds of matrimony, must be content to take the acts they have obtained, without expecting courts to maintain their validity against the constitution of the state.

The judgment of the Circuit Court is, with the concurrence of Judge Ryland, affirmed.