In re Estate of Ryan.

## In re Estate of JOHANNA RYAN, Deceased.

### St. Louis Court of Appeals, May 6, 1913.

1. **DEFINITIONS: "Widow."** The word "widow" signifies a woman who has lost her husband by death and is not married again.

2. **STATUTES: Statutory Construction.** It is the duty of the courts, in construing statutes, to interpret particular words by reference to the context, so as to effect the legislative intent as shown by the entire enactment, if such may be fairly ascertained, rather than to declare the precise meaning of the words standing alone.

3. ————: ————. Statutes in *pari materia* should be construed together.

4. **PARENT AND CHILD: Head of Family: Divorce.** Ordinarily the father is the head of the family, but, after divorce, the mother who remains unmarried may occupy that relation with respect to the children.

5. ————: Support of Child: Divorce. A minor child surviving his divorced mother is entitled to support from his surviving father, and a minor child of a deceased father is entitled to support from his mother, although she was divorced, unless it is possessed of independent means in its own right.

6. **EXECUTORS AND ADMINISTRATORS: Allowance to Minor Children.** Under Sec. 119, R. S. 1909, providing that, when a widow dies leaving minor children under sixteen years of age, they shall be entitled to the same allowances that she was entitled to take at the death of her husband, such children are entitled to those rights in the estate of the deceased mother, without regard to her interest in the estate of her deceased husband.

7. ———: ———: "Widow." Sec. 119, R. S. 1909, and kindred statutes, entitling minor children to certain allowances out of the estate of their deceased father or mother, although not in entire consonance with the common law, are highly remedial in character and are to be construed so as to carry out the spirit and purpose intended by the Legislature, and it is the duty of the court, as the case may require, to enlarge or restrain the meaning of words therein employed, to the end of effectuating the legislative intent; and, therefore, section 119, providing that, in case a widow shall die, leaving minor children under sixteen years of age, they shall be entitled to the same allowances she was entitled to take at the death of her husband, should, in view of the evident legislative intent to provide a sure support for the minor children, be construed to give a minor child under sixteen years of age, whose parents had been divorced, a right to an allowance out of the estate of its deceased mother, althoug its father was living.

8. **STATUTES: Statutory Construction: Remedial Statutes.** A statute which is highly remedial in character is to be construed so as to carry out the spirit and purpose of the Legislature, notwithstanding it is not in entire consonance with the common law, and it is the duty of the court to enlarge or restrain the meaning of words therein employed, to the end of effectuating the legislative intent.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED (*with directions*).

*Thomas D. Cannon* for appellant.

(1) The court erred in denying appellant an allowance out of the estate of Johanna Ryan, deceased, in lieu of provisions not on hand at the death of his mother, for his support and maintenance, during the twelve months succeeding the mother's death. Johanna Ryan, deceased, was a widow within the meaning Sec. 119, R. S. 1909, and the movant is entitled to reasonable provision out of her estate for his support and maintenance during the twelve months after her death. Secs. 114, 115, 119, R. S. 1909; Lewis v. Cos-

tello, 17 Mo. App. 593; Rittenhouse v. Hicks, 23 Weekly Law Bul. (Ohio) 269; 10 Ohio Dec. 759; Kunkle v. Reeser, 5 Ohio, 401, 404; 40 Cyc. 934; Anderson v. McGee, 130 S. W. 1040, 1043. (2) The court erred in denying to the appellant the sum of $400, as prayed out of the estate of his mother Johanna Ryan, deceased. At the death of Johanna Ryan she was a widow in contemplation of Sec. 119, R. S. 1909, and the movant was entitled to the sum of $400 out of her estate, under the provisions of Sec. 115, R. S. 1909. Secs. 115, 119, R. S. 1909; 40 Cyc. 934; Kunkle v. Reeser, 5 Ohio, 401, 404; Rittenhouse v. Hicks, 23 Weekly Law Bul. 269; 10 Ohio Dec. 759; Anderson v. McGee, 130 S. W. 1040, 1043.

*George W. Lubke* and *George W. Lubke, Jr.* for respondent.

Because Ryan survived her Mrs. Ryan at her decease was not a widow within the meaning of the statute under which the appellant claims. Her divorce did not make her such. The term widow must, under the general statute of the State relating to the construction of statutes, be taken in its "plain or ordinary and usual sense." R. S. 1909, sec. 8057.

NORTONI, J.—This proceeding originated in the probate court and subsequently found its way by appeal to the circuit court. It involves the question of the right of a minor, under sixteen years of age, to allowances of absolute property out of the estate of its deceased mother, who at the time of her death was not a widow but rather a divorced woman. The circuit court denied the right to the allowances for the reason the mother of the minor child was not a widow at the time of her death, and the guardian and curator representing the minor prosecutes the appeal here.

It appears Johanna Ryan died in the city of St. Louis on the seventeenth day of September, 1910, leaving a minor son, Philip Ryan, aged seven years as her only surviving child. Mrs. Ryan left a small estate consisting of personal property which is in the hands of her administrator, appointed by the probate court of the city of St. Louis. Though Mrs. Ryan was unmarried at the time of her death, she was not a widow in the usual sense of that term, for the reason she had been divorced a few years before by virtue of a decree of the circuit court, and the care and custody of the minor child, Philip Ryan, was awarded to her. It appears, too, that her prior husband William F. Ryan, father of the child, Philip, who was born in lawful wedlock, survived her and is still living. The guardian and curator of the little child, Philip, presented an application to the probate court in proper form for the allowances out of his mother's estate which the statute awards to a widow out of the estate of her deceased husband. But it is said the probate court denied the application, and on appeal it appears the circuit court did so as well, for the reason Johanna Ryan, the mother of Philip, was not a widow at the time of her death.

The statute conferring the right to allowances as absolute property on minor children under sixteen years of age in the mother's estate purports to do so "in case a widow shall die" leaving such minor children. [See Sec. 119, R. S. 1909.] In denying the right to the allowances prayed for, the court proceeded on the theory that the word "widow" refers alone to a woman who has lost her husband by death and has not married again, and that therefore, though the little child was under sixteen years of age when his mother died, no right accrued to him under the statute because she was a divorcee and not a widow.

In re Estate of Ryan.

There can be no doubt that the word "widow" signifies "A woman who has lost her husband by death and is not married again." It is so defined in Webster's New International Dictionary. Bouvier's Law Dictionary defines a widow as "An unmarried woman whose husband is dead." Black's Law Dictionary and also Anderson's Law Dictionary define the word "widow" as "A woman whose husband is dead and who is not married again." The word "widow" is defined by a standard authority in the law as "A wife that outlives her husband; one whose husband is dead and who remains unmarried." [See 40 Cyc. 934.] All of these authorities concur to the effect that the word "widow" implies that a subsisting married relation should be severed by the prior death of the husband and not by a divorce decree. Therefore, though it appears, as it does, that Johanna Ryan had not remarried after the divorce and though she continued to be a single woman at the time of her death, she was not a widow.

But be this as it may, it is the duty of the court, in construing statutes, to interpret particular words by reference to the context so as to effectuate the intention of the lawmakers as reflected by the entire enactment, if such may be fairly ascertained, rather than to declare the precise meaning of the word standing alone. In this view, we believe the word "widow," employed in the second clause of the statute here involved, was intended to impart a broader meaning than that above defined.

But it is urged the statute (Sec. 8057) commands that in the construction of all statutes, words, other than those of technical import, should be taken in their plain or ordinary and usual sense, and therefore we must regard the word "widow" as intending no more than that which the dictionaries define it to mean. It is true the section of the statute referred to so

reads, but its command is conditioned as follows in express words: "unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute." From this it appears that we are not required to accord the word "widow" its usual meaning if such meaning be plainly repugnant to the intent of the Legislature or of the context of the same statute and we believe it is.

There are several statutes touching upon the rights here involved and they are therefore *in pari materia*. Because of this they should all be considered together, to the end of ascertaining therefrom the obvious intent of the lawmakers. Those statutes are as follows:

"In addition to dower, the widow shall be allowed to keep as her absolute property a family Bible and other books, not to exceed two hundred dollars; all the wearing apparel of the family, her wheels, looms and other implements of industry; all yarns, cloth and clothing made up in the family for their own use; all grain, meat, vegetables, groceries and other provisions on hand and provided and necessary for the subsistence of the widow and her family for twelve months; her household, kitchen and table furniture, including beds, bedsteads and bedding, not to exceed the value of five hundred dollars." [Sec. 114, R. S. 1909.]

"If the grain, meat or other provisions allowed the widow in the preceding section shall not be on hand at the time of taking the inventory, the court shall make a reasonable appropriation out of the assets of the estate to supply such deficiency." [Sec. 115, R. S. 1909.]

"In addition to the above, the widow may take such personal property as she may choose, not to exceed the appraised value of four hundred dollars,

for which she shall give a receipt." [Sec. 116, R. S. 1909.]

"In case of the death of a father leaving no widow, but minor children under sixteen years of age, such minor children shall be entitled absolutely to the property and allowances that the wife would have been entitled to, under the provisions of articles I to XIII, inclusive, of this chapter, if she had survived her husband; and in case a widow shall die, leaving minor children under sixteen years of age, they shall be entitled to the same property and allowances absolutely as the mother was entitled to take at the death of her husband." [Sec. 119, R. S. 1909.]

Section 119—that last above copied—is the particular section here under review. Sections 114, 115 and 116—that is, those first above copied—confer the right to certain absolute allowances on the widow in respect of her husband's estate upon his death. These statutes have been parcel of our law from an early day. In 1879 the Legislature contributed what is now section 119—last above copied—as will appear by reference to section 110, Revised Statutes 1879. It is obvious that the Legislature by this section intended to confer on the minor children under sixteen years of age of a deceased "father leaving no widow" the identical right in respect of the widow's absolute allowances in his estate which obtains in her favor if she survives her husband. As to this the statute is clear. It is clear, too, that if an unmarried father should die, leaving such minor children and a prior wife surviving him with whom the marriage relation had been severed by divorce, such minor children would be entitled to the allowances otherwise available to the surviving prior wife had she continued to sustain that relation until the death of her husband.

This is true because the father was unmarried at his death and the divorced wife is not the widow of

In re Estate of Ryan.

the deceased prior husband and as such entitled to enjoy a continuation of his exemption rights in allowances available to his widow under sections 114, 115 and 116. The minor children under sixteen years of age, who otherwise would have no right to such allowances, are therefore entitled to them. No one can doubt that the Legislature intended this result—that is, that such minor children of an unmmarried father who should die and with whom the marriage relation had theretofore been severed by either death or divorce are entitled to the allowances otherwise available to the widow. This being true, it seems clear that it intended to confer the same rights touching the exemptions the mother enjoyed as the head of a family on the minor children under sixteen years of age of an unmarried mother who should die leaving no widower, for it is manifest like rights were contemplated with respect to the exemptions allowed by law to the parent in either event. Obviously the Legislature did not intend to discriminate respecting these rights in the mother's estate because of her divorce. This view is sustained by the fact that the identical section of the statute now under consideration is declared to be an exemption statute and therefore designed to provide a sure support for the minor children under sixteen years of age. [See Lewis v. Castello, 17 Mo. 593.] Ordinarily the father is the head of the family, but, after divorce, the prior wife who remains unmarried until death may occupy that relation, too, with respect to the children. It appears that, with this in mind, the Legislature cast the exemption rights of the parents, though measured by the statute, upon the minor children under sixteen years of age. In declaring the policy of the State through a statute, it is as much the duty of the Legislature to secure a sure support for the children in the mother's estate, if she re-

mains single and unmarried after divorce, as in that of the father.

It is true that the minor child here is entitled as of right to a support from his father, William F. Ryan, who survives, and that such support may be enforced, but it is likewise true that the minor child of a deceased father is entitled to the support of its mother though she be divorced from her husband, unless such child is possessed in its own right of independent means. [29 Cyc. 1606, 1607, 1608; Girls' Industrial Home v. Fritchey, 10 Mo. App. 344.] And if the father should die leaving surviving no widow but a prior wife divorced, it is certain that his minor children under sixteen years of age by her would be entitled to the allowances in their father's estate, notwithstanding their right to a support from the mother yet living. There is, therefore, no valid distinction with respect to the right of the minor child to support from either parent sufficient to influence the judgment of the court here.

On first reading, the thought is suggested from the concluding lines of the statute (Sec. 119) that the Legislature designed only to transmit to the minor children under sixteen years of age the right which a widow possessed in respect of allowances in her deceased husband's estate, and therefore unless she was a widow at the time of her death so as to entitle her to such allowances, no right could be transmitted to the children by the fact of her death; but such is not true, for it has been expressly determined that such minor children are entitled to those rights in the estate of their widowed mother without regard to her rights in the estate of her deceased husband. [See Lewis v. Castello, 17 Mo. 593; Baer v. Pfaff, 44 Mo. App. 35.] This being true, such minor children of a mother who dies without leaving a widower should be regarded as entitled to the exemption right she en-

joyed in her lifetime as defined by section 119 and the same as those enjoyed by the father who dies without leaving a widow, for in either event an immediate support should be available in aid of the offspring through utilizing the exemption right which obtained during life in the parent but after their death to be determined by the statutes here quoted.

But it is said on two prior occasions this court has accorded to the word "widow" in the second clause of this statute its usual meaning and we should adhere to those decisions. Such is entirely true, but the question here made was not in judgment in either of those cases.

In the first of those cases (Lewis v. Castello, 17 Mo. App. 593) it appeared the father died first and a few months thereafter the mother died. The court held, of course, that the minor children were entitled to an allowance out of their mother's estate because they were under sixteen years of age and her husband was dead. In the second (Baer v. Pfaff, 44 Mo. App. 35) the mother died while the marital relation existed and the father of the children survived as her widower. On these facts the court held the minor children were not entitled to the allowances in the mother's estate because her husband survived. The question presented in each of those cases was so free from doubt as to require no consideration save a mere reading of the statute. The right affirmed in the one and denied in the other was, in the one case, so obviously within, and in the other without, the statute that no careful consideration of the intention of the Legislature in employing the word "widow" was required. Therefore the validity of those decisions is in nowise impaired by declaring here that the Legislature intended in using the word "widow" in the second clause of the statute to confer the right to the absolute allowances upon the children under sixteen years of age of a

mother who died without leaving a widower, as in the instant case.

It is not true, as suggested, that these statutes are to be construed strictly as in derogation of the common law and every word employéd therein given effect so as to restrain the rights conferred. On the contrary, though they are not in entire consonance with the common law, they are highly remedial in character and are to be construed so as to carry out the obvious intention of the Legislature and effectuate the benign spirit and broad purpose contemplated, as was declared by the Supreme Court when, in construing the sense of the subsequent section—that is, section 120—conferring the same rights on a widower in his deceased wife's estate, the words "in addition to curtesy" therein were eliminated entirely, to the end of conferring the right to such allowances on a widower when no child had been born of the marriage. [See In re Ferguson's Estate, 206 Mo. 203, 104 S. W. 108.] Indeed, in construing statutes touching upon the rights of parties in cases of this character, it is the duty of the court, as the case may require, to enlarge or restrain the meaning of words employed, to the end of effectuating the manifest intention of the Legislature with respect to the subject-matter. [See Keeney v. McVoy, 206 Mo. 42, 103 S. W. 946.] In the case last cited the court substituted the word "descendants" for "children" so as to include grandchildren, which appeared better to subserve and to effectuate the intention of the Legislature in that behalf. See, also, Perry v. Strawbridge, 209 Mo. 621. 645, 108 S. W. 641, where the court interpreted the word "widower" in the statute providing that when the wife shall die without any child or other descendants her widower shall be entitled to one-half of her property, so as to restrain its ordinary meaning to a case where the husband became a widower through the ordinary vicissi-

tudes of life, and prevent his acquiring a right under the statute by his own criminal act of murdering her. In this view, the word "widow" should be enlarged so as to render the second clause of the statute under consideration as the counterpart of the first, for obviously the Legislature intended this result—that is to say, it intended that in event a mother should die leaving no widower but minor children under sixteen years of age, they should enjoy the same rights to exemptions as like minor children of a father, who dies leaving no widow, to exemption which he enjoyed during life.

The first lines of the statute are as follows: "In case of the death of a father leaving no widow but minor children under sixteen years of age, etc." The first line of the second clause is as follows: "And in case a widow shall die, leaving minor children under sixteen years of age, etc." The entire section purports to confer rights on the minor children under sixteen years of age and, of course, implies that the widow mentioned in the second clause shall be their mother, which is the counterpart of the word father in the first line of the first clause. Obviously this clause should read: In case a mother leaving no widower shall die but leaving minor children under sixteen years of age, etc.

By section 120, which came into our law first in 1895 (Laws of Missouri, 1895, p. 35), the widower is given the same rights in his deceased wife's estate that the widow enjoys under sections 114, 115 and 116 in her deceased husband's estate. We have not considered this section in connection with section 119 for the reason the latter came into our law in 1879 and we have therefore sought to deduce the intention of the Legislature there revealed without reference to subsequent legislation on the subject-matter of these allowances. But by reference to section 120, it appears that the Legislature intends, under the present state of the law, that the widower shall have like al-

lowances in his deceased wife's estate as she is entitled to in his estate. When section 119 is considered in connection with the rights of the widow in the husband's estate and the widower in the wife's estate, it would seem that the intention is, that the minor children under sixteen years of age shall be entitled to the allowances whenever the surviving parent may not claim them. It is obvious that William F. Ryan, the father of the little child here, is not entitled to an allowance in Johanna Ryan's estate for the reason the relation of husband and wife did not exist between the parties when she died, therefore section 120 is without influence here and the little child is substituted to the right which otherwise obtained in the father.

Furthermore the enlargement of the meaning of the word "widow" employed in the second clause of section 119 seems to be in keeping with the trend of the policy of the State as manifested through its legislative enactment touching these allowances, for the right thereto has been extended from time to time since the early history of our law. First, the widow alone was given such allowances in her deceased husband's estate by statutes substantially the same as sections 114, 115 and 116. Then in 1879 the right was extended to the children under sixteen years of age in accordance with the statute then enacted. [Sec. 119.] Thereafter, in 1895, the Legislature extended the right again and conferred it upon the widower upon the death of his wife as to like allowances in her estate. [See Sec. 120.] But this section as originally enacted conferred the right "if the wife shall die *intestate*." Thereafter, in 1906, this court determined that the right of the widower was limited by the employment of the word "intestate" so that no right was conferred upon him when she died "testate." [Black v. Brittain, 116 Mo. App. 386, 92 S. W. 500.] Thereafter, in furtherance of the trend to enlarge the right to take such allowances, the Legislature amended this

statute so as to read: ''If a wife shall die testate or intestate'' her widower shall be accorded such allowances, and so the statute reads at the present time. [See Laws of Missouri 1909, p. 94.; Sec. 120, R. S. 1909.] It, therefore, appears that the right of the widower was enlarged by this enactment so as to cast the right of such allowances on him whether his wife died testate or intestate. From this history of the statutes, it is clear that the Legislature has manifested an intention throughout of extending the right with respect to these allowances and enlarging the class of persons to take them. However, the subsequent legislation referred to and its history is by no means controlling here and is mentioned only as a circumstance indicative of the public policy of the State with respect to the subject-matter.

The judgment should be reversed and the cause remanded with directions to the trial court to proceed in accordance with the views above expressed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.