[Civ. No. 2650.    First Appellate District, Division One.—May 24, 1919.]

## SAMPSON B. WRIGHT et al., Appellants, v. ROSALIE CATHERINE ROHR, etc., et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — SUCCESSION — CONSTRUCTION OF CODE.—Subdivision 8 of section 1386 of the Civil Code is a rule of succession to be applied in the specified contingencies, and not a limitation upon the power of the surviving holder of community property to dispose of such property either by gift *inter vivos* or by last will and testament.

[2] ACTION TO SET ASIDE DEED—CONFLICTING EVIDENCE—FINDINGS— APPEAL.—Where in a proceeding to set aside a certain deed alleged to have been executed at a time when the grantor therein was of unsound mind and to have been procured by means of fraud and undue influence imposed upon her by the grantee, there is a conflict in the evidence which the trial court resolves in favor of the defendants, the appellate court has no power to disturb the conclusion reached.

[3] ID.—PROOF OF CONFIDENTIAL RELATIONSHIP—FINDING OF UNDUE INFLUENCE—BURDEN OF PROOF.—While in such a proceeding if a confidential, and therefore fiduciary, relation is established, the burden of showing the good faith of the transaction is on the grantee, the relation itself and opportunity are not sufficient to warrant a finding that undue influence was actually exerted.

APPEAL from a judgment of the Superior Court of Sonoma County. Thos. C. Denny, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. A. Barham, R. A. Long, H. W. A. Weske, Herbert Choynski and James Raleigh Kelly for Appellants.

Geary & Geary, J. R. Leppo and Phil Ware for Respondents.

WASTE, P. J.—This is nominally an action brought by plaintiffs, the appellants, to quiet title to a tract of land situated in Sonoma County. In addition to the relief usually sought in such actions, plaintiffs pray that a certain deed, set out in the complaint, be canceled. Judgment was entered in favor of the defendants, and plaintiffs appeal.

Winfield S. M. Wright, prior to his marriage to Jarena D. Wright, now deceased, was a widower with two children, the plaintiffs and appellants here, the issue of his former marriage. On December 13, 1860, said Winfield S. M. Wright and Jarena D. Wright were married, and continuously lived together as husband and wife until June 17, 1892, on which date said Winfield S. M. Wright died, testate.

During their married life, Winfield S. M. Wright and Jarena D. Wright accumulated the lands involved in this action, and other property, both real and personal not involved here, and the land in controversy was community property at the time of Winfield S. M. Wright's death.

After the death of said Winfield S. M. Wright, upon due and regular proceedings had in the superior court of Sonoma County, his will was duly admitted to probate. Sampson B. Wright, one of the plaintiffs here, and J. E. Hall became the duly appointed and qualified executors thereof. The will contained the following provision, relating to Jarena D. Wright, the surviving widow, and the property in controversy herein:

"Third Paragraph: I give and bequeath to my wife, J. D. Wright, in fee an undivided one-half of all those lands situate in Sonoma County, State of California, as follows, to wit: An undivided one-half of those lands conveyed to me by James M. Hudspeth by deed dated September, 1863 and recorded in the office of the County Recorder of said Sonoma County in Book of Deeds numbered 14 at pages 205 and 206 thereof, the entire tract containing about 294 acres."

By the same paragraph of the will an undivided one-half of other lands described was also devised to the widow. In due course the executors filed their petition for distribution, and in the answer of Jarena D. Wright, the widow, to the petition, she alleged the property in controversy here to be community property. Thereafter a decree of distribution was duly given and made, the decree, in so far as it affects the property in controversy here, contained the following provision:

"An undivided one-half interest in and to that tract of land known as the Hudspeth Tract [amply describing the same] is hereby distributed to Mrs. J. D. Wright in fee (the said tract being common property) and the other undivided one-half is hereby distributed in equal proportions, share and share alike to Sampson B. Wright and Mahala Olive Hall, for and during their natural lives respectively, with remainder over in fee to all the children of the said Sampson B. Wright and Mahala Olive Hall, all the children of each taking in fee, share and share alike, whether born now or hereafter, the quantity that their respective parent had for life."

The Sampson B. Wright and Mahala Olive Hall mentioned in the decree are the children of Winfield S. M. Wright, and are the plaintiffs in this action.

Shortly after the entry of this decree of distribution Jarena D. Wright instituted a suit in partition against the plaintiffs, her stepchildren, in which she sought to have partitioned the larger tract containing the property involved in this action. In her complaint, she averred herself to be "the owner in fee of an undivided one-half interest in both of said described tracts of land in common with the said defendants." As the result of this action the property was partitioned, and the tract in controversy here was duly set apart to Jarena D. Wright in severalty and in fee.

On the twenty-sixth day of July, 1898, Mrs. Jarena D. Wright made, signed, executed, and acknowledged a deed of the property which had been partitioned to her in fee, in which deed Rosalie Catherine Suggs (now Mrs. Rohr), defendant here, was named as the grantee. The deed recited consideration of love and affection and that said deed was made for the better maintenance, support, protection, and livelihood of the grantee. This deed remained in the pos-

session, or under the control, of Mrs. Wright until the seventeenth day of October, 1902, when, in the presence of reputable witnesses, she delivered the deed to Miss Suggs. The deed was duly recorded on the next day, and the property described herein, which is the land in controversy in this action, has ever since been assessed to respondent and she has paid all taxes levied thereon. It is this deed which plaintiffs seek to have canceled and under which defendant claims the right, title, and interest which plaintiffs seek to have quieted.

Mrs. Jarena D. Wright died intestate as to the land involved here on November 14, 1916, and left no issue.

The first contention of appellants is that, assuming a gift deed to have been made by Jarena D. Wright to Mrs. Rohr (neé Suggs), respondent, no interest whatever was conveyed by such deed, owing to the fact that the property was community property of Winfield S. M. Wright and said Jarena D. Wright; that, upon the death of the husband, the surviving spouse took, and held, all the community property distributed to her, in trust for plaintiffs, the children of her deceased husband, during her life; that, under section 1386 of the Civil Code, Mrs. Wright, not having sold or exchanged the property, or disposed of it by will, it reverted to them upon her death. Stated in another way, as we understand it, the contention of the appellants is, that said section 1386 is a limitation upon the estate which Mrs. Wright, the surviving spouse, took in the community property upon her husband's death and upon her power to dispose of or convey, other than by will; that she had, in effect, only a life estate therein; that, even had she seen fit to sell or exchange the property after distribution to her, the proceeds would, in turn, have become impressed with the same trust as the original estate; that, upon her death without issue, Mrs. Wright not having disposed of it by will, appellants are entitled to succeed to the property now claimed by Mrs. Rohr under the deed attacked in the court below. Reduced to a few words, the contention of appellants appears to be that Mrs. Wright, while living, could in no manner dispose of the property, but might by will, effective after her death.

Appellants contend, secondly, that the deed from Mrs. Wright to respondent was obtained by means of undue in-

fluence and fraud, and at a time when Mrs. Wright was of unsound mind.

Section 1386 of the Civil Code, in so far as it affects this case, is as follows: "When any person having title to any estate not otherwise limited by marriage contract, dies without disposing thereof by will, it is succeeded to and must be distributed . . . in the following manner:

"8. If the deceased is a widow, or widower, and leaves no issue, and the estate, or any portion thereof, was common property of such decedent and his or her deceased spouse, while such spouse was living, such property goes in equal shares to the children of such deceased spouse and to the descendants of such children by right of representation, and if none, then one-half of such common property goes to the father and mother of such decedent in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such decedent and to the descendants of any deceased brother or sister by right of representation, and the other half goes to the father and mother of such deceased spouse in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such deceased spouse and to the descendants of any deceased brother or sister by right of representation."

[1] Both appellants and respondents place much reliance on the opinion of the supreme court of this state in *Estate of Brady,* 171 Cal. 1, [151 Pac. 275]. As we understand that decision it appears rather to sustain the claim of the respondent that subdivision 8 of section 1386 of the Civil Code is a rule of succession to be applied in the specified contingencies, and not a limitation upon the power of the surviving holder of community property to convey.

From the facts of that case it appears that the wife predeceased the husband. At the time of her death there was certain community property of her husband and herself, consisting in part of real property and partly of notes and mortgages. The husband died intestate several years later. In the meantime he had sold the land and collected the amounts due on the notes, and had reinvested the proceeds in stocks and bonds. His entire estate consisted of the rents, issues, and profits of the community property owned by him and his said wife at the time of the death of the

latter, and of property purchased with moneys derived from the sale of said community property, and the satisfaction of the mortgages. Neither of the spouses leaving issue, on distribution of the husband's estate the lower court treated all of the property of the husband as being controlled in its devolution by said subdivision 8 of section 1386 and distributed it accordingly.

On appeal the principal claim was that none of the property left by Brady was common property of himself and wife at the time of the death of Mrs. Brady, and that consequently said subdivision was not applicable thereto. After deciding that "the apparent object of subdivision 8, when both spouses die without lineal descendants, is to provide for the inheritance of the property equally by the respective families of the two spouses by whose efforts it was accumulated," the supreme court disposed of appellants' claim by holding the more reasonable conclusion to be that "the subdivision applies not only to the community property in kind, as it existed at the death of the wife, but also to that into which the husband may convert it during his subsequent life, and that it also applies to the rents, issues, and profits thereof."

But the court went further, and said: "It does not follow that the heirs of the predeceased wife have anything more than an expectancy in the property, or its proceeds, during the subsequent life of the husband. It does not affect the husband's title. It may also be conceded that if such community property is by the husband so mingled with his other property, that it cannot be traced to its origin as a part of the community property, subdivision 8 could not be applied. . . . Mr. Brady was, without administration, from the moment of the death of his predeceased wife, the absolute owner of all the community property (*Estate of Klumpke,* 167 Cal. 415, 419, [139 Pac. 1062]), as fully as though it had been his separate property during coverture, with power to deal with it as he saw fit, even to the extent of effectually devising or bequeathing it by will, subdivision 8 of section 1386 of the Civil Code applying only in the event of intestacy. This, however, is entirely immaterial in determining the proper construction of the rule of succession presented by subdivision 8 of section 1386 of the Civil Code. The situation is the same in this re-

gard whether the property remain in its original form, or is exchanged by the surviving spouse for other property. In each case we are dealing with property which during the life of the surviving husband was his absolute property, to do with as he wills. The legislature has simply enacted a rule of succession in regard thereto, in the event of his dying intestate, as it unquestionably had the right to do.'' (*Estate of Brady,* 171 Cal. 1, [151 Pac. 275].)

This exact question was also before this court but a short time ago, so recently, in fact, that the respective parties to this litigation were allowed to file supplemental briefs to discuss the decision in the case of *Veirs* v. *Roberts,* 39 Cal. App. 684, [179 Pac. 689]. The facts of that case are strikingly similar to those of the case at bar, and the contentions on appeal are identical. It was charged that the deed, in that case, from mother to daughter, was executed while the former was incompetent, was obtained by undue influence, and that the property in question, being proceeds of community property of Mrs. Roberts and her predeceased spouse, must be regarded as held by her in trust for their children, and that the attempted conveyance of it to one of them, to the exclusion of the others, was a violation of the rights of the latter. The last contention was based, as it is here, upon subdivision 8 of section 1386 of the Civil Code. Having reached and announced the opinion that there was evidence to sustain the findings of the trial court upholding the deed's due execution, this court said: ''The most cursory reading of the above quotation from section 1386 makes it apparent that it has no reference to the situation presented in this case, for two reasons: First, the property concerned in this litigation formed no part of the estate of Mrs. Roberts at the time of her death; and, second, the subdivision quoted in part provides a rule of succession to a certain character of property when the owner thereof shall die intestate and leaving no issue. It fully recognizes the right of the owner to dispose of such property either by gift *inter vivos,* or by last will and testament, which right was exercised in this case.''

After a careful re-examination of the matter as it is presented on this appeal we have no hesitation in announcing our adherence to the views there expressed.

The second point advanced by appellants on this appeal is that the deed from Mrs. Wright to Mrs. Rohr, of July 28, 1898, was made by Mrs. Wright at a time when she was of unsound mind, and was procured by means of fraud and undue influence imposed on her by the respondent. The finding of the trial court was opposed to this contention and we are asked to review the testimony of some twenty-five witnesses, and the proceedings taken in the court below, brought here by the alternative method and consisting of a record of more than twelve hundred pages. Our labors have been lessened by the painstaking manner in which counsel for each side have observed the requirements of the court rule governing the matter, and have printed in supplemental form, appended to their respective briefs, such portions of the record as they desired to call to the attention of the court.

[2] After a careful review of the testimony thus presented we are satisfied that the trial court was correct in its decision. There is some evidence which, standing alone and uncontradicted, might support a contrary view, but on the whole the testimony preponderates strongly in favor of the respondent's side of the case. This is particularly so in view of the law applicable to such facts as we understand it. The most favorable view we can take in support of appellants' position, is that there is a conflict in the evidence, which the trial court passed upon, and reconciled. We have no power to disturb the conclusion reached.

From the findings, amply supported by the evidence, it appears that in 1893 the respondent, then a girl of about sixteen years of age, at the request of Mrs. Wright, went to live with the latter, at the ranch in Sonoma County, and from that time occupied a place in the home as a member of the family. The relation between the two soon became that of mother and daughter, and so continued until the death of Mrs. Wright. The younger woman referred to and addressed the elder as "mother." The respondent was affectionate, obedient, industrious, and respectful toward Mrs. Wright and performed and shared with the latter the usual household, family, and social duties, obligations and pleasures incident to the relation so existing between the two. They lived together in the home of Mrs. Wright until respondent married in 1898. After that date, the respond-

ent and her husband lived with Mrs. Wright until 1912. From that time until her death in 1916 Mrs. Wright lived at the home of respondent and her husband.

In 1898, Mrs. Wright sent for her attorney and told him she wished to give her property to respondent, and wished, when she died, everything to go to her. The matter of carrying her plan into execution by means of a deed in escrow was discussed by her and her attorney, and the latter fully explained the details of the transaction and its results. These matters he discussed alone with Mrs. Wright, who gave the attorney the description of the property to be conveyed by the deed. The deed under attack in this case was the result of these interviews. Mrs. Rohr knew nothing about the making of the deed at the time it was made, did not discuss the subject with Mrs. Wright, and did not learn of its execution until told of it by her foster mother herself, more than a year later. At the time of the execution of this deed there was nothing in the attitude or conduct of Mrs. Wright to indicate to her attorney, who had known her for some time, that there was any impairment of her mental faculties. Other witnesses, including the pastor of her church, testified that at this period of her life, both mentally and physically, Mrs. Wright was unusually active and alert for a woman of her years, she being at that time of the age of seventy-four years or thereabouts.

Four years later, in 1902, Mrs. Wright took the deed from escrow, and in the presence of an attorney (not the one who had drawn the deed) and other witnesses in her own home made actual delivery thereof to Mrs. Rohr, at the same time receiving from the latter an agreement, which, among other provisions, conveyed to herself a life estate in the property. The day following, the deed and agreement were duly recorded. The testimony shows that Mrs. Rohr knew nothing of the purpose of her foster-mother to deliver the deed and take back the agreement for a life estate until called into the room by the notary who took her acknowledgment to the latter document.

The mental condition of Mrs. Wright during a period as far back as 1885, particularly between the time of the making of the deed and its delivery, and until her death, was testified to by a number of witnesses called by the opposing sides, other than those already mentioned. Among

41 Cal. App.—18

them were Mrs. Wright's physician, another doctor, relatives, friends, and acquaintances of long standing. To summarize their testimony, with some contradictions, is but to conclude that Mrs. Wright was not only strong-minded, clear-headed, and sound mentally, but that, as her physician testified, "her mental condition was extremely good for a person of her age—in fact, extremely good, regardless of age."

A number of witnesses also testified from their own observations, in instances extending over a period of many years, relative to the relations existing between Mrs. Wright and Mrs. Rohr, before and after the execution and delivery of the deed. From our review of the testimony of all of these witnesses, which in some material matters presents a conflict, we are led to the conclusion that the trial court was justified in finding these relations to be as we have heretofore described, and that the execution and delivery of the deed from Mrs. Wright to Mrs. Rohr was not the product or result of any influence, or act, whatever of respondent, and was not induced by any fraud on her part. The findings likewise properly exonerate the husband of respondent, who, although not made a party to the action, was directly charged in the complaint with being a party to the fraud and undue influence to which, it was therein alleged, Mrs. Wright was subjected.

Appellants contend that, it being established that the relationship between Mrs. Wright and Mrs. Rohr was one of unqualified affection and confidence, and that the opportunity for the exercise of undue influence existed through the parties living together for so many years, the burden was upon respondent to prove that fraud and undue influence was not practiced, and that no undue advantage of Mrs. Wright was taken in the matter. [3] A confidential, and therefore fiduciary, relation being established, the burden of showing the good faith of the transaction was undoubtedly on the respondent. (*Nobles* v. *Hutton,* 7 Cal. App. 14, [93 Pac. 289]; *Bacon* v. *Soule,* 19 Cal. App. 429, [126 Pac. 384].) This burden, we feel, was squarely met and sustained, as we have already indicated in expressing our approval of the findings of the trial court.

The confidential relation existing between Mrs. Wright and respondent, and the opportunity afforded therefrom

for the latter to exercise undue influence, were proper matters to take into consideration with the other evidence in the case. But the relation itself and opportunity were not sufficient alone to warrant a finding that undue influence was actually exerted. (*Estate of Ricks,* 160 Cal. 461, [117 Pac. 532].) No activity on the part of Mrs. Rohr, or anyone in her behalf, was shown in the matter of the preparation of the deed. (*Estate of Baird,* 176 Cal. 384, [168 Pac. 561]; *Estate of Higgins,* 156 Cal. 261, [104 Pac. 6].) The record presents uncontradicted testimony that she knew nothing about its execution until long after it was made, and did not anticipate its delivery until it was actually delivered to her some years later by her foster-mother, who, at the time, it is sufficiently shown, was acting upon independent advice of counsel and friends, and in pursuance of a well-defined plan, matured in her own sound and disposing mind.

The conclusion reached by the trial court in the matter was correct and its judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1919.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.