[L. A. No. 11246.  In Bank.—October 1, 1930.]

In the Matter of the Estate of IVA FARRAND Mc-ARTHUR, Deceased.

H. G. Simpson for Appellant.

Victor T. Watkins for Respondent.

LANGDON, J.—The decedent was formerly the wife of William W. Farrand. He died on September 1, 1920. Subsequently she married Samuel L. McArthur. On May 7, 1926, she died intestate, leaving no issue of either marriage. McArthur, her second husband, survived her.

All of the property of her estate included in the petition for distribution involved herein was, at the time of the death of Farrand, her first husband, the community property of Farrand and herself.

McArthur, the second and surviving husband, claimed the whole of the property. Lillian Mae Flint, the sister and sole heir of Farrand, the first husband, objected, contending that one-half thereof should be distributed to her.

The court determined that the surviving husband was entitled to the whole, and McArthur having died during administration, distributed the property to his estate. This appeal is taken by the said sister.

The single issue presented by this case is as to the interpretation of section 1386, subdivision 8, of the Civil Code, which reads as follows:

"If the deceased is a widow, or widower, and leaves no issue, and the estate, or any portion thereof, was common property of such decedent and his or her deceased spouse, while such spouse was living, such property goes in equal shares to the children of such deceased spouse and to the descendants of such children by right of representation, and if none, then one-half of such common property goes to the father and mother of such decedent in equal shares, or to the survivor of them, if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such decedent and to the descendants of any deceased brother or sister by right of representation, and the other half goes to the father and mother of such deceased spouse in equal

shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such deceased spouse and to the descendants of any deceased brother or sister by right of representation.

"If the estate or any portion thereof was separate property of such deceased spouse, while living, and came to such decedent from such spouse by descent, devise, or bequest, such property goes in equal shares to the children of such spouse and to the descendants of any deceased child by right of representation, and if none, then to the father and mother of such spouse, in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such spouse and to the descendants of any deceased brother or sister by right of representation."

The meaning and effect of this statute in the ordinary case is quite clear. A husband dies intestate, leaving his surviving wife, and no issue. The estate consists of community property. The whole of such property vests in the widow under section 1401 of the Civil Code. She has full power of disposition over it. But if she fails to exercise such power, and dies intestate, leaving no issue, an important problem arises: shall the property accumulated by the joint efforts of both the husband and the wife, go solely to the wife's heirs, merely by reason of the fact that the husband predeceased her? The statute meets the problem by providing that one-half of the property shall go to certain designated members of the deceased husband's family or their descendants.

In the instant case, if the decedent be considered the widow of Farrand, then the statute applies, and the property should have been divided between her sole heir (her surviving husband, McArthur) and her deceased husband's sister. It is the contention of respondent, however, that upon her subsequent remarriage to McArthur, she ceased to be the widow of Farrand, and that thereupon the statute no longer applied. The trial court so concluded, and distributed the property without regard to subdivision 8.

The primary question, then, is as to the interpretation to be placed upon the term "widow" as used in the section. Ordinarily it means a woman whose husband is dead and *who has not married again.* (Webster's New International

Dictionary, p. 2334; 3 Bouvier's Law Dictionary, p. 3454; Black's Law Dictionary, p. 1227; 40 Cyc. 934; *Appeal of Kerns,* 120 Pa. St. 523 [14 Atl. 435] ; *In re Ryan's Estate,* 174 Mo. App. 202 [156 S. W. 759] ; *Rosenbloom* v. *Southern Pac. Co.,* 59 Cal. App. 102 [210 Pac. 53].) But there is considerable authority holding that the term may, when used in a statute, be applied to a woman who, though a widow of her former husband, has remarried. *In re Ray's Estate,* 13 Misc. Rep. 480 [35 N. Y. Supp. 481, 484], comes to the following conclusion: "A woman, though the wife of another, is still the widow of her former husband; though married to another woman, the husband is still the widower of his former wife. . . . The law invests them with the name of 'husband' or 'wife' or 'widow' for certain legal purposes, and under these names, although the designation may not come within the definition of the dictionary, property may vest in them, whether it comes to them by legacy or otherwise. Notwithstanding the definitions of the words 'wife,' 'widow,' and 'husband,' we apprehend it is not our duty to accept them in place of the statutes of this state, which make use of these words, whether correctly or not, to designate persons entitled to certain legal rights." In *Davis* v. *Neal,* 100 Ark. 399 [L. R. A. 1916A, 999, 140 S. W. 278], the question was whether a woman who had remarried upon the death of her former husband, came within the terms of a homestead exemption for the "widow or child or children of any deceased person, who was, when living, entitled to the benefits of this act." The court said (140 S. W., p. 279) : "We think that the word 'widow,' as used in the act, *refers to the person, and not to her state or condition, whether she remains a widow or marries again.* The rule is that, whenever a right of law is attached to a person by reason of her being a widow, such right remains, unless other words are used in the act which limit it. If the Legislature had intended that her right of homestead should cease when she married again, it would doubtless have used words of that import such as during her widowhood which would refer to her state or condition, and not to the person, or would have added the words 'until she marries again' or 'so long as she remains unmarried.'" (Italics ours.) The case of *Iltz* v. *Krieger,* 104 Or. 59 [202 Pac. 409, 206 Pac. 550], reaches a similar result. In

*Mathews* v. *Marsden et al.,* 71 Mont. 502 [230 Pac. 775, at page 778], it is said: "We think that the word 'widow,' as used in both of these sections of our Codes, refers to the person and not to her state or condition, whether she remains a widow or marries again. We are of the opinion that it was not the purpose of our Legislature to penalize a widow in case of her remarriage. . . . " (See, also, *Hansen* v. *Brann & Stewart Co.,* 90 N. J. L. 444 [103 Atl. 696].)

Such decisions are of no direct aid in the solution of the problem before us; but they are nevertheless of the highest value, for they indicate that the term is not of fixed and positive meaning, but on the contrary calls for construction. Our situation is aptly characterized by the court in the case of *In re Ray's Estate, supra,* as follows: " . . . we are confronted with the definitions of the word 'widow' as stated in the various dictionaries . . . and by the argument, based on these definitions, that in order to be a widow she must remain unmarried. *The question at issue is not whether these definitions are correct, but what is the legal import, meaning, effect, and object of the words 'wife or widow of a son'* . . . as those words are used in this and other statutes of this state, or, if the language made use of to express the intention of those who prepared and passed the law is not clear, *what construction will best accomplish the design."* (Italics ours.)

It follows that this court is charged with the duty of construing our own statute to determine the legislative intent. In this connection, we should observe that practically the only aid to interpretation to which we have been directed, or to which research has led us, is the statute itself, for the few decisions which have dealt with subdivision 8 have not mentioned the problem herein presented, with the exception of *Estate of Underhill,* 190 Cal. 233 [211 Pac. 801], in which the question was expressly left open. Our inquiry is, therefore, whether section 1386 of the Civil Code, and particularly subdivision 8 thereof, discloses any definite purpose which might indicate the sense in which the term "widow" was used in said subdivision. In brief, did the legislature intend that the remarriage of a widow should eliminate the rule laid down in subdivision 8, and make the descent of the property follow the rules set forth in the other subdivisions?

The provisions of subdivision 8, in so far as they are relevant here, may be briefly summarized. In the first place, the subdivision deals with descent from a widow. Second, it deals with community property which vested in such widow by the death of her husband. Third, it covers a situation where there are no issue of the widow nor children of the deceased husband.

The purpose of these provisions is quite obvious. ▆ Subdivision 8 does not, of course, limit the testamentary power of the widow as to such property. Thus, the decedent in the instant case had full control over it and could have deeded it or willed it to her new husband or to anyone else. (*Estate of Hill,* 179 Cal. 683 [178 Pac. 710]; *Estate of Brady,* 171 Cal. 3 [151 Pac. 275]; *Estate of Wenks,* 171 Cal. 607 [154 Pac. 24]; *Veirs* v. *Roberts,* 39 Cal. App. 684 [179 Pac. 689]; *Estate of Marshall,* 42 Cal. App. 683 [184 Pac. 43]; *Wright* v. *Rohr,* 41 Cal. App. 265 [182 Pac. 469].) Nor does the subdivision conflict with other parts of section 1386. There is no indication that it is to be construed as subordinate to subdivision 4. Subdivision 4 gives the surviving husband the whole of the property of a deceased wife, where she leaves neither issue, parents, brothers or sisters, nor children or grandchildren of a deceased brother or sister. Subdivision 8, which comes afterward, deals with a special class of property, and to that extent constitutes, it would seem, an exception to the blanket provisions of subdivision 4. ▆ In other words, subdivision 8 does not limit the right of a surviving husband to succeed to the whole of his wife's estate in the absence of the surviving relatives specified in subdivision 4, *where such property came to her from any source save that specified in subdivision 8.* But it does limit the right of the surviving husband to succeed to the wife's estate, *where that estate came to her through the death of her former husband,* either as his separate property, or as community property vesting in her under section 1401 of the Civil Code. In this situation, therefore, and with respect to property of such origin, subdivision 8 makes a rule of succession designed to benefit the objects of the bounty of the former owner—the deceased husband. It seeks to turn the descent of such property back to the line from which it was diverted by the first marriage of the wife, that is, back to the hus-

band's family, instead of permitting it to go to the wife's family. In the case of community property, one-half goes back in this manner. In the case of separate property, the whole goes back. (See *Estate of Simonton*, 183 Cal. 53, 58 [190 Pac. 442].) With respect to the community property, the theory seems clear enough. The idea of the community under our statutes is that the whole undisposed of estate should go to the survivor, who was, during the lifetime, a member of the community and a contributor to the acquisition of the property. Hence, when the husband dies without making a will, the wife takes the whole. By this special rule embodied in section 1401 of the Civil Code, the deceased husband's share of such property is diverted from *his family*—parents, brothers and sisters, etc., to *his wife*. But upon the death of the wife, the reason for this special rule disappears, and the statute therefore provides that the one-half of the property representing the former interest of the deceased husband, shall go back in the normal line of succession to *his family, and not the family of his wife*. This view is expressed in *Estate of Brady*, 171 Cal. 1, 4 [151 Pac. 275, 276], where it is said: ''The apparent object of subdivision . 8, where both spouses die without lineal descendants, is to provide for the inheritance of the property equally by the respective families of the two spouses by whose efforts it was accumulated.''

The obvious conclusion from the above is that subdivision 8, in so far as it deals with the deceased husband's former interest in the property, is not concerned with the matter of *relationship to the wife*. As to that interest, the wife's parents, brothers and sisters, etc., are definitely excluded, in favor of persons who bear no blood relationship to the wife at all—namely, the parents and brothers and sisters of the deceased husband. The subdivision makes *the origin of the property and not the closeness of the relationship to the wife*, the test of succession in the particular situation covered by it. Hence it is illogical in this case to speak of the close relationship of the new husband, and his relative superiority, as an object of the wife's bounty, over her deceased husband's family. We are not here concerned with the objects of the *wife's* bounty. If we were, then her father and mother, or brothers and sisters should all take to the exclusion of those of her deceased husband. They

all have superior claims on the wife, just as has the new husband. But the statute does not so provide, and the provision that it does make shows unmistakably that the legislature intended, in the particular situation covered by subdivision 8, that the origin of the property should indicate the persons to be benefited. Where the property, either in whole or in part, has its origin with the deceased husband, the statute provides that the whole or such part shall go to the objects of his bounty, not hers.

If this be the correct interpretation of the statute, it is clear that the remarriage of the widow can have no effect upon its operation, *for such remarriage has nothing to do with the persons whom the statute attempts to benefit.* So far as the objects of the husband's bounty are concerned, it is immaterial whether she remarries or not, for her new husband is as much a stranger to the family of her old husband, as are her other relatives.

Looking now not at the provisions of subdivision 8, but at its important omissions, we find additional support for these views. That the legislature contemplated the passage of years between the deaths of the husband and wife is clear from the enactment of the statute. (See *Estate of Brady,* 171 Cal. 1, 4 [151 Pac. 275].) If it contemplated that years might so elapse, it must certainly have contemplated the possibility of remarriage by the survivor. This being so, a failure to limit the application of the statute to a widow who remains unmarried is, under the authorities discussed above, an indication that no such result was intended. (See *Davis* v. *Neal, supra; Mathews* v. *Marsden et al., supra.*) Subdivision 8 makes no such limitation. Moreover, it expressly provides for *the issue* of the decedent; such issue would take instead of the deceased spouse's family. But nothing is said about a new and surviving *spouse,* notwithstanding the fact that elsewhere in the same section, a surviving spouse and a child are deemed equal in right to inherit. (Civ. Code, sec. 1386, subd. 1.) The omission seems deliberate and equivalent to an express exclusion. (See *Estate of Underhill,* 190 Cal. 233, 235 [211 Pac. 801].)

We are not unmindful of the blanket provision of subdivision 4, which reads: "If the decedent leaves a surviving husband or wife, and neither issue, father, mother, brother,

sister, nor the children or grandchildren of a deceased brother or sister, the whole estate goes to the surviving husband or wife"; and of the added difficulties presented by this subdivision. To us, however, it hardly seems that subdivision 4 was intended to apply to the special situation of subdivision 8. Subdivision 4, like all previous subdivisions, is not concerned with the origin of the property. It deals with property of the wife other than that which came through her husband or through the marriage as provided in subdivision 8. And here we may point out that it is immaterial that the wife is the owner of the property. With respect to her new husband, the estate is her separate property, the moment of her former husband's death, and it remains her property whether she remarries or not. (See *Estate of Brady,* 171 Cal. 1, 6 [151 Pac. 275].) Subdivision 4, which does not deal with the origin of the property, cannot be construed as limiting or modifying subdivision 8.

To adopt the view contended for by respondent, that the legislature intended to exclude from subdivision 8 a widow who subsequently remarried, would lead to results which are contrary to the plain purpose of the provision. Take, for example, the separate property of the deceased husband. Under the statute, when the widow dies without issue, the whole of such property goes back to the line of the deceased husband. Where the wife remarries, if she is not deemed a widow, none of such property goes back to the line of the deceased husband, but only half of it ordinarily goes to the new, surviving husband. The other half goes to the father and mother, or brother and sister, etc., of the wife (Civ. Code, sec. 1386, subd. 2), who would not take at all if she were a widow within the meaning of the statute. In other words, the remarriage of the wife serves, under this interpretation, to confer a new right on *others than the new husband,* strangers both to the marriage and to the origin of the property, a purely arbitrary and illogical result which cannot be deemed to have been the intention of the legislature.

Again, suppose the deceased husband has a child by a previous marriage, and upon his death, community property vests in the surviving wife. She then remarries. If she is still a widow under subdivision 8, the property goes to the child of her former husband. (*Estate of Marshall,*

42 Cal. App. 683 [184 Pac. 43].) If she is not, her new husband, a stranger to the acquisition of the property, takes the whole under subdivision 4, to the exclusion of a child of one of the parties who contributed to the acquisition thereof.

Other examples might perhaps be found, but these are sufficient to show that the construction of the term "widow," which is urged by respondent, would frequently lead to results entirely inconsistent with the purposes of the statute; and, on the other hand, the construction for which appellant contends appears to carry out these purposes. We cannot agree with respondent that the effect of this latter construction would be that while the sister of a deceased spouse would take one-half of the property, the rest would, in our situation, escheat to the state. While such a result might be suggested from the absence of any mention of a surviving husband in subdivision 8, it is palpably unsound. Escheat only takes place when there are neither kindred nor heirs of the decedent (Civ. Code, sec. 1386, subd. 9); and irrespective of the provisions of subdivision 8, the remaining one-half of the property not distributable to any persons named therein, must be deemed to pass to McArthur as the surviving husband or heir of Mrs. McArthur. This point is, however, not involved in the present appeal. Appellant makes claim to but one-half the property, and does not object to the order of distribution to McArthur to the extent of the other half. It has been decided by this court that the interests of the relatives of one spouse may vest, under this subdivision, regardless of whether the other spouse left any relatives to claim their share. (*Estate of Ross*, 187 Cal. 454 [202 Pac. 641].)

The judgment is reversed, with directions to the trial court to modify its decree of distribution so as to provide that one-half the community property in question shall be distributed to Lillian Mae Flint, appellant herein, and the remaining one-half to the estate of Samuel L. McArthur.

Curtis, J., Preston, J., Waste, C. J., Richards, J., Shenk, J., and Seawell, J., concurred.