In re ESTATL OF CHARLES R. ULRICI, Deceased; WILLIAM THOMPSON, Administrator, Appellant, v. ERIKA JOHNSTON, Respondent.

St. Louis Court of Appeals, November 4, 1913.

**EXECUTORS AND ADMINISTRATORS:** Allowance to Widow: Priority Over Expenses of Administration. A widow who applies for the absolute allowances out of the estate of her deceased husband, given her by Secs. 114, 115, and 116, R. S. 1909, within the time required by Sec. 117, is entitled to have such allowances paid before payment of the expenses of litigation incurred by the administrator in an unsuccessful attempt to defeat her right to the statutory allowances, and before payment of any other claim or expense of administration.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Fred Armstrong, Jr.* for appellant.

(1) The claims of the widow for absolute allowance and for allowance in lieu of provisions are demands against an estate, not distributive shares. They take property out of the estate to make it the property of the widow. Under the statute they must be established by an order against the administrator and they are demands which the administrator alone, in proper instances, must resist, and the expense of such resistance is chargeable against the estate. Revised Statutes 1909, Secs. 114, 115, 116, 117, 118; Lewis v. Costello, 17 Mo. App. 593; In the Matter of Smith, 1 Misc. 269; Koch v. Koch, 121 Mich. 667. (2) Where an estate is not sufficiently large to pay the widow's allowances an order of no administration may be granted but in that event the necessary costs attending the order must be paid, and if administration is had as it always may be and as may be practically essential as

in the case at bar, the expenses of administration must be paid even at the expense of the widow's allowance. Campbell v. Whitsett, 60 Mo. App. 444; Craslin v. Baker, 8 Mo. 437; Loeb v. Richardson, 74 Ala. 311; Lamar v. Belcher, 154 Mo. App. 571.

*S. C. Rogers* for respondent.

The court did not err in not allowing the administrator all of the credits taken credits for by him in his annual and final settlements. The credits were improper and were properly disallowed. Woerner's Am. Law of Adm. (2 Ed.), section 516, p. 1251; Id. Section 517, p. 1253; Peters v. Berkemier, 128 Mo. App. 666; Sections 114-118, R. S. 1909; Cummings v. Cummings, 51 Mo. 261; Hastings v. Meyers, 21 Mo. 519; Glenn v. Gunn, 88 Mo. App. 423, s. c. 88 Mo. App. 442; King v. Exr. of King, 64 Mo. App. 303; Coulter v. Lyda, 102 Mo. App. 414; Campbell v. Whitsett, 66 Mo. App. 366; Pound v. Cassity, 166 Mo. 419; Waters v. Herboth, 178 Mo 166; Martin v Jones, 155 Mo. App. 490; Nelson v. Troll, 156 S. W. 16.

NORTONI, J.—This is an appeal by the administrator from a judgment sustaining exceptions preferred by the widow of his decedent against his final settlement.

The question for decision pertains to the right of the widow to have her absolute allowance satisfied from the estate of her husband first of the expense of administration and especially of costs and expenses accrued in litigation through which the administrator attempts to defeat her right to the statutory absolute allowance.

It appears that Charles R. Ulrici departed this life in 1898 and that the exceptor, Erika Johnston, was his widow, though she has since intermarried with Johnston, whose name she bears here. At the time of the death of exceptor's husband, Charles R. Ulrici, he

left no estate of which his widow was advised. Because of this fact, no application was made to the probate court touching the matter, either for an administration or an order for nonadministration. However, at the time of his death, Charles R. Ulrici owned a one-fourth interest in a paid-up policy of insurance on the life of his father, Rudolph W. Ulrici, which one-fourth interest amounted to $778. Subsequently, about nine years thereafter, in March or April, 1907, Rudolph W. Ulrici, the life insured, passed, and the policy thereon became payable to the beneficiaries therein stipulated. Thereupon the appellant, William B. Thompson, was appointed administrator of the estate of Charles R. Ulrici, decedent, by the probate court of the city of St. Louis, for the purpose of collecting and distributing the one-fourth interest in the policy of life insurance then payable to Charles R. Ulrici's estate. There was paid to the administrator by the insurance company the one-fourth portion of the insurance money due under the policy to his decedent amounting at the time to $778, which together with accrued interest thereon totaled $817.91. The administrator inventoried this and charged himself with the amount stated as assets of the estate of Charles R. Ulrici, deceased, in the probate court. It seems that the decedent left no debts unpaid, or at least no demands on that account were filed against the estate.

On June 7, 1907, the exceptor here, the widow of Charles R. Ulrici, filed a motion in the probate court, praying that the widow's allowance in lieu of provisions be awarded to her under the statute, in the amount of $360, and furthermore that the widow's absolute allowance of $400 be likewise awarded to her out of the $817.91 then in the hands of the administrator. This matter came on for hearing in the probate court, and, on September 21, 1907, that court awarded the widow $300 in lieu of provisions, but omitted entirely to make an order touching or to allow her claim

for $400 as an absolute allowance. From the order awarding the widow $300 in lieu of provisions, the administrator appealed to the circuit court, and the matter was there litigated anew. The circuit court reduced the amount of the allowance in lieu of provisions, and awarded the widow $240 therefor. From this judgment of the circuit court the administrator prosecuted an appeal to this court, but the judgment was affirmed here, as will appear by reference to the case of Johnston v. Thompson, 145 Mo. App. 463, 122 S. W. 761. This amount—$240—allowed in lieu of provisions, together with twenty-five dollars interest thereon, was finally paid by the administrator.

During the interim, while the case was pending on appeal and on April 17, 1909, the widow filed a second motion in the probate court, praying that she be awarded her absolute allowance of $400 from the funds in the hands of the administrator, on which matter, though prayed in the former motion, the probate court had omitted to act. This motion for the absolute allowance, too, was opposed by the administrator, but unsuccessfully, for the probate court awarded the sum to the widow as prayed. From this judgment of the probate court, the administrator appealed to the circuit court, for the purpose, it is said, of maintaining the matter in *statu quo* until the decision of this court on the widow's right to an allowance in lieu of provisions. Thereafter, on December 17, 1909, the circuit court affirmed the judgment of the probate court and thereby ordered paid to the widow her absolute allowance of $400. No appeal was prosecuted from this judgment of the circuit court, and, although its mandate was duly transmitted to the probate court without delay, the amount remained unpaid.

From this it appears that, though the widow's original claim for an allowance of $360 for provisions was reduced to $300 and allowed in the probate court and by the circuit court reduced a second time to $240

and allowed and that judgment affirmed on appeal here, which was paid, she was also allowed $400 as her absolute allowance, or a sum total, adding the two together, of $640, to be paid from the funds in the hands of the administrator.

In his first annual settlement, exhibited in the probate court June 9, 1908, the administrator took credit for a number of items expended in and about this litigation and in his final settlement did likewise. In his annual and final settlement, the administrator took credit for, and charged the estate with, the expenses incident to the litigation and the several appeals therein which were prosecuted to the end of defeating the allowances so made to the widow. Such items of expense so charged to the estate relate to the filing fee on appeal to the circuit court, bill of exceptions, docket fee and transcript, printing abstract of record and brief, costs in the circuit court in the first case and costs in the circuit court pertaining to the $400 allowance, copy of testimony used in stipulations, attorney's fee and an amount of $25.60 for interest on the allowance of $240 in lieu of provisions awarded to the widow. These items together total the sum of $205.35, and it is to the allowance of these as credits to the administrator and charges against the estate in the settlement, that the widow interposed her exceptions which were sustained both by the probate court and the circuit court.

It appears that the entire assets of the estate was cash in the hands of the administrator, amounting to $817.91. From this the widow was allowed $240 in lieu of provisions and $400, her absolute allowance under the statute, or a total of $640. There was ample in the estate to satisfy this entire amount, had it been paid, but in the litigation pertaining to it, $205.35 expenses accrued, which the administrator seeks to first pay before satisfying the rights of the widow. This course would entail the expense of the litigation on

the widow, though she prevailed, for, after deducting such expense, there remained an insufficient fund to pay her claims. It is true the first judgment of $240 in lieu of provisions, together with the interest thereon, has long since been paid, and the amount involved here is the $400 absolute allowance only. When the appellant administrator filed his final settlement in the probate court, to which the exceptions were made, it appears there was but $289.32 remaining of the entire estate, after deducting the several amounts excepted to and other credits not excepted to, with which to liquidate the widow's absolute allowance of $400.

Both the probate court and the circuit court, on sustaining the widow's exceptions to the settlement, surcharged the administrator's account with the $205.35, on account of the items above mentioned, and ordered the $400 absolute allowance paid in full. It is urged this was error for the reason the administrator may employ counsel and contract expenses in defending the estate, and this, too, at the expense of the estate, so long as he acts in good faith. It is not essential to consider the matter of good faith of the administrator here, as these allowances are given by the statute to the widow first of all other claims, and this includes the expense of administration, for they are not of the estate. Indeed, if there is not sufficient to pay them and the expense of administration besides, then no administration should be had. Our statutes (Secs. 114, 115, 116, Revised Statutes 1909) have been construed from an early date as awarding to the widow absolute property from the husband's estate, provided she applies for it under section 117 before the same shall be distributed or sold. It is true section 115 provides that if certain grain, meat or other provisions allowed to the widow by section 114 is not on hand, the court shall make a reasonable appropriation out of the assets of the estate to supply the deficiency. Touching this matter, it is clear that there is a question for

the judgment of the probate court as to what is a reasonable allowance in the circumstances of the case. However this may be, the authorities from an early date have declared, and with marked emphasis insist, that the property and allowances enumerated in these statutes is the absolute property and the absolute allowance of the widow.

It is true the Kansas City Court of Appeals says, in Lamar v. Belcher, 154 Mo. App. 571, 572, 573, 136 S. W. 748 that the "face of the statute shows that what is called the absolute property of the widow vesting immediately upon the death of the husband, is more nearly an absolute *right* to the property, if other plain statutory conditions are met, or do not stand in the way." It may be that such is the proper view, but the Supreme Court has declared in plain terms, time and again, that the property enumerated in the statute and the allowance provided for are the absolute property of the widow and not parcel of the decedent's estate.

Woerner's Am. Law of Administration (2 Ed.), Sec. 86, pp. 176, 177, says: "The right of the widow to the money or property allowed for her and her family's temporary support is held in some States to be absolute, and to vest at once upon the husband's death" and cites in the note in support of the text Hastings v. Myers, 21 Mo. 519; McFarland v. Baze, 24 Mo. 156, holding that it passes at once upon the husband's death, discharged of the lien of the debts, and may be assigned by her by deed even without consideration, citing Cummings v. Cummings, 51 Mo. 261. In the more recent case of Waters v. Herboth, 178 Mo. 166, 172, 77 S. W. 305, the Supreme Court says that these sections of the statutes—that is, sections 114, 115, 116 —give certain articles and $400 to the widow. Moreover the court says, "Those sections were not designed to affect the final distribution, but the idea was to allow the widow to have those articles *in the beginning*.

They were to be separated from the estate that was to be administered, *to form no part of it,* neither for the creditors nor the distributees; they were to be *given to the widow in the first place,* and it was *only what was left after those articles were given to the widow that was to be treated as the estate to be administered."* (Italics are our own.) This language of the Supreme Court is conclusive to the effect that the absolute allowance to the widow became her property and formed. no part of the estate to be charged with expenses of whatever kind. Indeed, section 118 of the statutes fortifies the thought, in that it provides that if the widow does not receive the property thus allowed her, and it is sold by the administrator, the court shall order the money to be paid to the widow at any time before it is paid out for debts or be distributed. From this it seems to be clear that her right is absolute in the property, especially when an application is made in due time, as was the case here, under section 117.

In speaking of the section of the statute awarding the widow a year's support, this court said, in Glenn v. Gunn, 88 Mo. App. 442, 445, it is hers absolutely—given by the wise and humane sentiments of an enlightened age, out of compassion for her hapless state when the breadwinner is lost. Creditors can not seize nor should bequests defeat it. The law makes no difference between the indigent and the opulent in respect of this bounty. [See, also, Glenn v. Gunn, 88 Mo. App. 423; Nelson v. Troll, 173 Mo. App. 51, 156 S. W. 16.] These are exemption statutes and are universally so regarded and treated by the courts. [See Woerner's Am. Law of Administration (2 Ed.), Sec. 77, p. 160 et seq.; In re Estate of Ryan, 174 Mo. App. 202, 156 S. W. 759; Lewis v. Castello, 17 Mo. App. 593, 594.] In this view, the widow's allowance is to be preserved entire for her use and support, and this, too, first from the expense of administration. Section

10 of the Administration Law (see Revised Statutes 1909) obviously contemplates this, for it provides that if the estate is no greater in amount than is allowed by law as the absolute property of the widow, administration shall be dispensed with entirely. It is certain that, under the established rule of decision in this State, the widow's allowances are regarded as her absolute property and not to be considered as assets of the estate. The cases are multiplied which declare such to be true. In those States where the courts so construe these statutes, the rule obtains as well that the allowances go free to the widow first of the expenses of administration of the estate.

Touching this question an accepted authority of high repute says, "Since the property allowed to the widow is not, in most States, treated as assets of the estate, it would seem to follow that the widow is entitled to it in preference to creditors of any kind, whether for ordinary debts of the decedent, expenses of last illness, or even funeral expenses *and charges for settling the estate."* [See Woerner's Am. Law of Administration (2 Ed.), Sec. 85, p. 176.] In the case of Denton v. Tyson, 118 N. C. 542, it appears that the year's support of the widow, which had been laid off and assigned to her, consumed all of the personal estate of the husband except the sum of $89.06 cash on hand. In addition to this, the widow was allowed the sum of $182 in cash as her allowance, to be paid out of the personal estate by the administrator. The administrator did not have this amount on hand, but paid to the widow the remaining $89.06, which exhausted the personalty. The court declared this to be proper under the statute, as the widow's right was first even to the *costs and charges of the administration.* In discussing the question, the Supreme Court of Georgia said in Whitehead v. McBride, 73 Ga. 741, 742 that the widow's allowance *"is a charge above and beyond and independent of administration and its expenses,* and

stands before all debts and *all other expenses* of administration, and dispenses with all those expenses." (The italics are ours.)   [See, also, to the same effect Kingsbury v. Wilmarth, 2 Allen (Mass.) 310.]

The argument that an administrator may become personally liable for and required to pay expenses of counsel and costs of litigation in combatting the unjust claims of an imposter asserting herself to be the widow is, in view of the state of our law, one to be advanced to the Legislature and not a matter for consideration here.   However, no question touching an imposter was involved in the litigation under review and it is therefore beside the case.   The court very properly sustained the exceptions of the widow, in so far as they related to the charges and expense of administration which encumbered her claims, and beyond this we are not concerned.   The judgment should be affirmed.   It is so ordered.   *Reynolds, P. J.,* and *Allen, J.,* concur.