Marie PHELPS, Executrix of the estate of Calvin M. Phelps, deceased, Plaintiff,

v.

E. O. BOOKWALTER, Defendant.

No. 1779.

United States District Court
W. D. Missouri, S. D.

Nov. 21, 1962.

802

Clarence O. Woolsey, Springfield, Mo., for plaintiff.

F. Russell Millin, U. S. Dist. Atty., Kansas City, Mo., Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner, Acting Asst. for Civil Trials, Dept. of Justice, Washington, D. C., for defendant.

JOHN W. OLIVER, District Judge.

This is an action for the refund of estate taxes and assessed interest, allegedly overpaid by the estate of Calvin M. Phelps. The stipulated facts present the basic question of whether or not a widow's allowance in Missouri constitutes a terminable interest for the purpose of determining the marital deduction under Section 2056 of the Internal Revenue Code of 1954. There is no dispute that the surviving wife applied for and received a one year's allowance in the amount of $20,000 which was paid her in a lump sum; that in the federal estate tax return, the full amount of the allowance was claimed by the estate as part of the estate tax marital deduction; that the claimed deduction was ·disallowed; that a deficiency was assessed; that it was paid; and that a claim for refund was disallowed. We have and exercise jurisdiction over this action for refund

under Sections 1340 and 1346, Title 28 United States Code.

■ The parties are in agreement that whether a widow's allowance qualifies for the marital deduction is entirely dependent upon Missouri law.[1] They also agree that until the enactment of the new Missouri Probate Code in 1955, there was no question but that a widow's allowance was an non-terminable interest and therefore deductible.

The law of Missouri before the enactment of the new Probate Code was stated in former Section 462.450 (R.S.Mo. 1949). The relevant portions of that section provided that:

"In addition to dower, the widower or widow shall be entitled to keep as his or her absolute property * * * such sums of money in exclusion of all debts, claims, charges, legacies, and bequests, as the court may deem reasonable for the proper support of the said widower or widow, and the minor children under the age of eighteen years, if any, as the case may be, for the period of one year after the death of the spouse, in a manner suited to his, her or their condition in life, taking into account the condition of the estate of the deceased spouse, and the court shall make such appropriation out of the personal assets. of the estate * * *."

Monahan v. Monahan's Estate (1936) 232 Mo.App. 91, 89 S.W.2d 153, 155, 156, construing the Missouri law as it stood before the enactment of the new Missouri Probate Code, held:

"(O)ur courts, from a very early day, have, with remarkable unanimity, held that * * * the money allowed * * * became the absolute property of the surviving widow or widower, as the case may be, free from the claims of creditors or distributees or other beneficiaries of the

1. Rev.Rule 83, 1953–1 Cum.Bull. 395, expressly provides in part that "whether any interest thus taken by a widow satisfied the statutory requirements in this

respect is to be determined in the light of the applicable provisions of the state statutes as interpreted by the local courts."

estate. * * * (T)he right to an allowance out of the estate * * * inures in the surviving spouse.

\*    \*    \*    \*    \*

"It is certain that under the established rule of decision in this state the widow's allowances are regarded as her absolute property, and not to be considered as assets of the estate."

Section 474.260 of 26 V.A.M.S. was adopted in 1955 as Section 135 of the new Missouri Probate Code.[2] It provided:

"In addition to the right to homestead allowance and exempt property the surviving spouse and unmarried minor children of a decedent shall be entitled to a reasonable allowance in money out of the estate for their maintenance during the period of one year after the death of the spouse, according to their previous standard of living, taking into account the condition of the estate of the deceased spouse. The allowance so ordered may be made payable in one payment or in periodic installments, and shall be made payable to the surviving spouse, if living, for the use of such surviving spouse and the minor children; otherwise to the guardians or other persons having the care and custody of any minor children; but in case any minor child is not living with the surviving spouse, the court may make such division of the allowance for maintenance as it deems just and equitable. The court may authorize the surviving spouse to receive any personal property of the estate in lieu of all or part of the money allowance authorized by this section, and in any case where the court makes such allowance in money, the surviving spouse shall be entitled to select and receive any personal property of the estate, of a value not exceeding such allowance in money, which shall be in lieu of and which value shall be credited against the allowance. The right of selection provided for herein is subject to the provisions of section 473.-620, RSMo. The allowance herein authorized is exempt from all claims, charges, legacies and bequests."

Section 474.300 of 26 V.A.M.S. was adopted in 1955 as Section 138A of the new Missouri Probate Code. It provides:

"When a surviving spouse dies, or if an unmarried minor child dies, marries or comes of age, no allowance shall be made under section 474.260 for his maintenance for any period after such death, marriage or coming of age. When a surviving spouse dies without having received the homestead allowance, it may be paid (if it has been allowed but not paid) or may be allowed (if not already deemed waived) to the unmarried minor children. If an unmarried minor child entitled to homestead allowance, dies, marries or comes of age before his homestead allowance has been made, and within the time for applying for it, he shall not be entitled to such allowance, but if he dies, marries or comes of age after it has been allowed but before it was paid, he shall be entitled to it."

The Government contends that Section 474.300 "had no counterpart in Missouri law prior to its enactment" and that the effect of this "specific provision (Section 474.300) changes the family allowance which has been regarded as a non-terminable interest into one which is terminable".

Plaintiff, on the other hand, urges that "the present Probate Code did not in any way change the existing law in Missouri"; that "present Section 474.260 does not differ in substance from the old law"; and that "the new Probate Code (does not) affect the principles set out in Monahan v. Monahan's Estate

---

2. This section was amended in 1957 but in a manner not important to this case. See Laws of Missouri 1957, p. 829, § 1.

(1936) [232 Mo.App. 91], 89 S.W.2d 153, and similar cases".

Cases such as United States v. Quivey (8th Cir., 1961) 292 F.2d 252, reviewing Nebraska law, and United States v. First National Bank & Trust Co. of Augusta (5th Cir., 1961) 297 F.2d 312, reviewing Georgia law, and other like cases cited by the parties which review the law of states other than Missouri, do not rule this case. Our decision, to use Judge Blackmun's words in his concurring opinion in Quivey, depends entirely on the "vagaries of the state law" of Missouri.

It is our view that we must ascertain the law of Missouri in a manner not dissimilar from the judicial processes we would apply if we were ascertaining the rule of decision to be applied pursuant to Section 34 of the Judiciary Act of 1789 and the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

All that we have before us initially in this case are the cold sections of the new Probate Code of Missouri. No Missouri court has yet construed the newly enacted sections of the 1955 Missouri Probate Code. As pointed out by Judge Johnsen in Yoder v. Nu-Enamel Corporation (8th Cir., 1941) 117 F.2d 488, 489, "where direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements". Judge Johnsen also made clear that "the responsibility of the federal courts, in matters of local law, is

not to formulate the legal mind of the state, but merely to ascertain and apply it." [3]

In regard to the rules of state law, the federal court is like "the stranger from afar", as Mr. Justice Cardozo put it in Hawks v. Hamill, 288 U.S. 52, 60, 53 S.Ct. 240, 243, 77 L.Ed. 610 (1933) who must permit "himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot". In McIntyre v. Kansas City Coca Cola Bottling Co. (W.D.Mo.1949), 85 F.Supp. 708, 713, Judge Ridge held that where "there is no direct expression" by the Missouri courts, part of the available "persuasive data" to which a federal court may and should look are law review comments written on the law of the particular state involved.[4] We believe that part of the "persuasive data" that we should consider includes the type of non-judicial data that is considered by the State court itself.

Specifically, when the Supreme Court of Missouri looks to editorial comment and to footnotes to the statutes published in Vernon's Annotated Missouri Statutes, as it did in regard to the new Missouri Probate Code in Owen v. Riffie (Mo.1959) 323 S.W.2d 765, 768; and when it looks to law review articles there reprinted which had been written by a Probate Judge of Missouri, the Honorable Leslie A. Welch, who was also a member of the Advisory Committee created in 1953 to draft the proposed Probate Code for submission to the Legislature, we believe that this and like data must be considered by us in our determination of the meaning to be given the applicable State statutes.[5]

---

3. See also Hausman v. Buckley (2nd Cir., 1962) 299 F.2d 696, 704, cert. den. 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286, in which it was held that the only proper function of the federal court "is to ascertain what the [state] law is, and not to speculate about what it will be". That case added that "it is certainly not our function to apply the rule we think better or wiser."

4. Judge Ridge cited and relied on President and Directors of Georgetown Col-

lege v. Hughes (1942) 76 U.S.App.D.C. 123, 130 F.2d 810, 812, in which then Judge Rutledge held that under particular circumstances "scholarly opinion has more than merely persuasive effect. It is the safest guide * * * where the question has never been determined".

5. We do not pass on the question of whether Rev.Rul. 83, 1953-1 Cum.Bull. 395 expressly adopted the Erie doctrine. What we do hold is that this directive can not rationally nor effectively be ap-

We therefore examine, as we believe a Missouri court would examine, the best evidence and the most persuasive data available to determine whether or not the Missouri Legislature intended fundamentally to change the nature of a widow's allowance from a non-terminable interest, as was clearly held in Monahan, to a terminable interest, as contended by the Government in this case.

The Final Report of the Joint Probate Laws Revision Committee to the Sixty-eighth General Assembly (1955) stated that:

"The proposed probate Code herewith submitted is primarily a revision and restatement of existing Missouri statute and case law, with such changes as are necessary to correct its defects. The order in which the various subjects appear is somewhat similar to that used in the Model Probate Code, prepared for and proposed by the American Bar Association, but the substance is mostly from Missouri law. * * Moreover, much of the new matter is taken from Missouri case law or from the common law."

That report further stated that:

"Where a departure from existing Missouri law is proposed, the change is specifically pointed out in the comment following the various sections, which contains the proposed change in the Missouri law."

What is now Section 474.260 was Section 135 of the bill proposed in the Final Report of the Revision Committee. In regard to that section, the Committee

comment did not suggest that a "departure from existing Missouri law (was) proposed". Nor did it, however, suggest that the substitution of most of the language of Section 44 of the Model Probate Code was not a departure from the Missouri law.[6]

Section 474.300 has a more complicated history. As noted in the Revisor's Note following that section in V.A.M.S., this section did not originate with the Revision Committee but "was inserted by legislative amendment". Section 474.-300 was section 138A of the final bill as passed. It had its origin in the "Suggested Amendments to the Proposed Probate Code" filed with the Senate Judiciary Committee by the Honorable James M. Douglas (a former Judge of the Supreme Court of Missouri). Those suggested amendments were presented by Judge Douglas on behalf of the St. Louis Fiduciaries Association and they recommended that a new Section to be known as Section 138A be inserted in the new Probate Code. Judge Douglas' comment (page 69 of the Suggested Amendments) stated that the new section was "largely self-explanatory". It obviously dealt with problems that might arise in connection with the proposed new homestead allowance which clearly represented a departure from existing Missouri law and which substituted a new series of rights for the homestead estate which then existed under the Missouri law.[7] Judge Douglas' comment in its entirety was as follows:

"[Comment. The foregoing is largely self-explanatory. § 138 is silent as to the time as of which the

plied by the Internal Revenue authorities or by us unless a judicial process quite similar to that followed in an Erie situation is applied. At least, such is the rationale of our decision in this case.

6. The Committee Comment that appeared in the Final Report of the Revision Committee is printed in full in V.A.M.S. immediately following Section 474.260. It reads:
"Committee Comment: This is taken from section 44 of the Model Probate Code. The allowance for one year is specified instead of during the period of

administration as given in the Model Probate Code provision. The last sentence is added in order to conform to section 462.450 (R.S.Mo. 1939 § 106). Under the Model Probate Code, funeral expenses and administration expenses have express priority over the family allowance but not over exempt property or homestead."

7. For the nature of the old homestead estate, see the Comment entitled "Homestead—Effect of Remarriage by Widow", in 6 Mo.L.Rev. 80 (January, 1941), and compare the statutes and rules of deci-

status of spouses and children as regards surviving, being unmarried, and being of age, shall be determined. Even with the suggested § 138A if the widow is paid $7500 as homestead allowance and then dies leaving minor children, what happens to the $7500?]"

There is additional available data as to what those most responsible for the new Missouri Probate Code believed to be the purpose and intent of the proposed legislation. Edward D. Summers, the Revisor of the Missouri Statutes of the Committee of Legislative Research, who had been assigned specially as a part of the Research Staff for the Joint Probate Laws Review Committee of the General Assembly, wrote an article on this subject entitled "The Proposed Probate Code for Missouri", published in 20 Missouri Law Review, 123 (April, 1955).

The stated purpose of that article was "to acquaint the reader with the general scope of the changes undertaken by the proposed code" and to give a "very brief summary of the major changes proposed by the pending legislation". On page 134, Section 135 (which was to become Section 474.260) was given but passing attention and it must therefore be assumed that the author believed that no major change in substance was being proposed in regard to widow's allowances. Summers there stated:

"Under the code the spouse or unmarried minor children are allowed as their absolute property (1) the household furniture (insofar as such furniture is of a value of not more than $2,000 it is not subject to the debts of decedent); (2) an allowance for maintenance for one year,[53] and (3) a homestead allowance of one half of the estate up to $7,500 in value. The first two of

these allowances are similar to those under our present law [55] while the third is designed to replace the present estates of dower and homestead" [8] (Other footnotes from this quotation omitted.)

In quite similar fashion, Judge Leslie A. Welch, expressed the same judgment. Judge Welch, in addition to being a member of the Advisory Committee of the Revision Committee of the General Assembly as above noted, has long been and is presently an outstanding Missouri Probate Judge. He served as Chairman of the Probate Laws Revision Committee of the Missouri Bar which had been active in the effort to obtain a new Probate Code for Missouri.[9] Judge Welch's article appeared in the September, 1955 issue of the Journal of the Missouri Bar. He stated that "the Joint Legislative Committee decided to base the new code in large part on existing Missouri law" and that "possibly the completed product would have been more satisfactory, in form at least, if it had been written 'from scratch' without endeavoring to preserve so much of our present statutes—though retaining the portions of substantive law therein deemed desirable, but following the format of recent codes adopted in other states".

Judge Welch, like Mr. Summers, pointed out the instances where changes in substance were made but, and again like Mr. Summers, he indicated that no change in substance was contemplated in regard to the old family allowance although, of course, he noted in detail the radical change proposed in the new legislation in regard to homestead.

In the face of this data, the Government nevertheless insists that the first sentence of Section 474.300, having no exact counterpart in the old Missouri

---

sion there discussed with present Section 474.290.

8. Footnote 53 within the quotation above cites "Section 135" of the proposed legislation; Footnote 55 cites the then existing "Mo.Rev.Stat. §§ 462.450, 462.460 (1949)."

9. See the comment of then Senator and now Judge Floyd R. Gibson in his Introduction to the Summer article in 20 Mo.L.Rev. at page 123 for the interest of this committee of the Missouri Bar in the new Probate Code legislation.

law, was inserted for the purpose of changing the existing Missouri law in regard to widows' allowances. The Government argues that the language of that single sentence can not be read as meaning that "no allowance shall be made after (the surviving spouse's) death" so that it may be reconciled with the law as it existed before the new Code was adopted.[10] It will, of course, become the ultimate duty of a Missouri court to make a final declaration as to what the Missouri Legislature intended by its inclusion of that single sentence in its new Probate Code. But Missouri is "not without law save as its highest court has declared it", West v. American Telegraph & Telephone Co., 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). And it is also true that we must decide this case. In the discharge of our duty we can not ignore the data to which we have referred in preference to the cold and isolated reading of the words of a particular statute as suggested by the Government. The decisive question in this case is, as was the question in Hawks v. Hamill, supra, "one distinctively local in origin and content (so that) there must be recourse to something more than the pages of a dictionary".

We are not at all sure that had we been sitting on a Missouri court we would have decided Monahan in the manner that it was decided.[11] But we have no doubt about what a Missouri court did hold in Monahan. Nor do we have any doubt that no one connected with the drafting and passage of the new Probate Code ever dreamed that they were changing the rule of Monahan. We likewise are most doubtful that any Missouri court would hold that a single sentence in Section 474.300 was intended to and did in fact change the rule of Monahan. We are therefore required to find that the interest created by Section 474.260 is unaffected in substance by the language relating to that section in Section 474.300 and that the rule of decision announced in Monahan is still the law of Missouri, at least so far as the facts of this case involving a lump sum payment are concerned, and that plaintiff should prevail.

Counsel for the plaintiff shall within ten (10) days prepare a formal order, submit it to opposing counsel for approval as to form, and present the same to the Court for approval.

IT IS SO ORDERED.

10. We have not overlooked the Government's contention that "by specific enactment of Section 474.300 the Missouri legislature has provided that the interest *divests* if the surviving spouse dies during the period of the allowance". A not dissimilar argument concerning a conversion of interests was rejected in Traders National Bank of Kansas City v. United States (W.D.Mo.1956) 148 F. Supp. 278, aff'd (8th Cir., 1957) 248 F.2d 667. See also the excellent analysis of more similar situations in Estate of Landers v. Commissioner, 38 T.C., No. 83, September 13, 1962, and particularly Estate of Gale, 35 T.C. 215 (1960) and Rudnick, 36 T.C. 1021 (1961) wherein the rule that merely because a widow may die before a lump sum award is made does not convert her interest into a terminable one is recognized and applied. Cf. Estate

of Rensenhouse, 31 T.C. 818 (1959), redetermining 27 T.C. 107 (1956) upon remand from 252 F.2d 566 (6 Cir., 1958).

11. See, for example, Lamar v. Belcher (1911), 154 Mo.App. 571, 136 S.W. 748, which holds that the broad manner in which the early Missouri cases stated the effect of earlier Missouri statutes might not have meant all that they seemed to say. But see also, in regard to Lamar, the case of In re Ulrici's Estate (Mo.App.1913), 177 Mo.App. 584, 160 S.W. 812, in which it was held that the law of Missouri in regard to widows' allowances is what the Supreme Court of Missouri says it is, theories of the common law and statutory language to the contrary notwithstanding. All of which emphasizes that we must apply and not make the law of Missouri.